SHEPARD, C.J.,
dissenting.
I can acknowledge the pertinence of the smattering of decisions cited by the majority and still see them as standing in tension with Fourth Amendment principles. The U.S. Supreme Court has indicated that in calculating Fourth Amendment reasonableness in the context of vehicle stops and resulting brief detention, the interests of the state tend to be weighed more heavily, and those of the motorist less heavily, where the subject matter concerns the privilege of driving. See Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Motorists whose careless or reckless driving is so serious as to lead to license suspension constitute a genuine threat to the safety of their fellow citizens, few of whom will appreciate that today's decision places them at greater risk of injury. As Chief Justice Roberts observed a few weeks ago about other forms of dangerous driving, it will be difficult "to explain to the family" of an innocent injured party that the police had a chance to prevent the injury but were powerless to act. Virginia v. Harris, -- U.S. - , -, 130 S.Ct. 10, 12, 175 L.Ed.2d 322, -- (2009) (Roberts, C.J., dissenting from denial of certiorari).
The majority's decision appears rooted in the concern that police officers would otherwise abuse their authority and engage in discriminatory enforcement of traffic laws. Justice Ginsburg described this concern as ensuring that police officers are not using traffic stops merely as a means to conduct "fishing expeditions." Ohio v. Robinette, 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Here, it is not disputed by the majority that the initial stop of the vehicle was a valid one.
Likewise, there is no allegation that the officer's request for Holly's identification substantially extended the stop. The Supreme Court has expressly rejected establishing any rigid limitation on Terry stops like the one in this case. Instead, the issue is how diligently the officer pursues his or her investigation. United States v. Sharpe, 470 U.S. 675, 685-86, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). On this point, the Court has said:
While it is clear that the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion, we have emphasized the need to consider the law enforcement purpose to be served by the stop as well as the time reasonably needed to effectuate those purposes.
Id. at 684, 105 S.Ct. at 1568. The Fifth Circuit in recognizing that an officer may request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation has "'reject[ed] any notion that a police officer's question [of a detainee during a traffic stop], even on a subject unrelated to the purpose of a stop, is itself a Fourth Amendment violation.'" United States v. Brigham, 382 F.3d 500, 508 (5th Cir.2004) (en bane) (quoting United States v. Shabazz, 993 F.2d 431, 437 (5th Cir.1998)) (emphasis in original). The Brigham court pointed out that it is the detention, not the questioning, that is the evil at which Terry's second prong is aimed.
Here, the officer executed a valid traffic stop and his request for Holly's identifica *328 tion was still within the routine procedures of standard stops. Absent any evidence that this minimal request would have otherwise prolonged the stop, even had Holly possessed a driver's license, I can see no evil in the request.